PHILLIPS et al., Appellants,

v.

CITY OF GARFIELD HEIGHTS; CITY OF CLEVELAND et al., Appellees.

[Cite as *Phillips v. Garfield Hts.* (1992), 85 Ohio App.3d 413.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 61095.

Decided Nov. 12, 1992.

*Paul E. Weimer* and *David P. Weimer,* for appellants.

*Christopher A. Holecek,* Assistant Director of Law, for appellee city of Cleveland.

*George S. Coakly,* for appellees Peter Boyas and Boyas Excavating, Inc.

JOHN F. CORRIGAN, Judge.

Plaintiffs-appellants, Russell J. Phillips, Sr. et al., appeal from the order of the trial court granting a directed verdict in favor of the city of Cleveland, and from the court's verdict in favor of Boyas Excavating, Inc. and Peter Boyas. Pursuant to R.C. 2505.22, the city of Cleveland, Boyas Excavating and Peter Boyas have filed assignments of error with the court. For the reasons set forth below, we reverse the trial court's order granting a directed verdict in favor of the city of Cleveland, reverse the verdict of the trial court in favor of Boyas Excavating and Peter Boyas, and remand for a new trial.

## I

On November 17, 1986, plaintiffs James and Tina Baughman and William Gall commenced a lawsuit in common pleas court against R.B. Development, Northcoast Oil and Gas Recovery, Ridge Park Development Corp., Boyas Excavating, Inc., Peter Boyas, Cleveland Builders Supply and Rockside Reclamation, alleging damages arising from methane gas which invaded plaintiffs' homes from a neighboring landfill. That action was designated case No. 119688. The trial court granted a motion by R.B. Development for partial summary judgment on November 23, 1987. On January 28, 1988, case number 119688 was voluntarily dismissed without prejudice by the plaintiffs.

A similar action was filed on December 19, 1986 by plaintiffs Russell and Sherry Phillips and William and Jean Szucs against the same seven defendants. That action was designated case number 121378. On February 9, 1987, Ann Rohrer, Mary Jane Chanson and Heidi Therese Chanson were added as plaintiffs. On February 10, 1988, case No. 121378 was voluntarily dismissed without prejudice by the plaintiffs.

The instant action was filed on June 21, 1988 by all ten plaintiffs in case Nos. 119688 and 121378. Original defendants in the action were the cities of Cleveland and Garfield Heights, Ohio; Boyas Excavating; Peter Boyas; Cleveland Builders Supply; R.B. Development; Ridge Park Development Corp.; Rockside Reclamation, Inc.; and Cuyahoga County. By the time this matter proceeded to trial, the case had been resolved with regard to all defendants except the city of Cleveland, Boyas Excavating, and Peter Boyas. The only issues remaining for the trial court were the plaintiffs' claims in nuisance and negligence. The only evidentiary matter presented for review concerns plaintiffs' claims against Cleveland, and we will limit our discussion accordingly. The remainder of the matter on appeal concerns the procedures employed by the trial court.

The trial of this matter commenced on October 15, 1990. In furtherance of its claims of nuisance and negligence, the plaintiffs presented witnesses who lived

near the landfill and identified Cleveland as the primary user of the landfill. Henry Pearson, a neighbor of the plaintiffs, testified that the landfill operator dumped trash onto one of the plaintiffs' backyards, and dumped within thirty to forty feet of the yards of other plaintiffs. Pearson did not identify Cleveland vehicles doing that specific dumping, but did note that Cleveland was the most frequent user of the landfill. Pearson further testified regarding the migration of methane gas into his home, and into several of the plaintiffs' homes.

Richard Taylor, Commissioner of the Division of Waste Collection and Disposal, was called by the plaintiffs as if on cross-examination. Taylor testified that Cleveland dumped approximately 225,000 to 245,000 tons of solid waste at the landfill each year from 1972 to 1978. Taylor further testified that the city had no control over the landfill and never inspected its operation.

James Green, a civil engineer, testified as an expert on behalf of the plaintiffs. Green reviewed the operation of the landfill and testified that the landfill had never operated according to industry standards from its inception. Furthermore, Green testified that the landfill was never properly "closed" so as to minimize methane gas migration. Green testified that the methane migration into plaintiffs' homes was caused by improper operation of the landfill from 1972 to 1978, including dynamite blasting, lack of a clay liner for the landfill and lack of venting the gas, and by improper closure of the landfill in 1978, including the failure to install a methane collection system. Finally, Green testified that it was an industry standard at all relevant times that a hauler of solid waste not use a site that was improperly operated.

Plaintiffs introduced exhibits from the Garfield Heights Fire Department and Ohio Environmental Protection Agency indicating that explosive levels of methane gas existed in their homes and neighborhoods from 1986 through the trial date.

At the close of the plaintiffs' case each of the defendants moved for directed verdicts. These motions were denied by the trial court.

In defense of this matter, Cleveland presented the testimony of Daniel Merritt and Harry Whitley. Each of these witnesses was employed as a waste hauler for Cleveland. Both testified that the waste haulers using the landfill had no discretion as to where to dump their loads. Further, both testified that the landfill operator controlled where the trucks could travel. Finally, Merritt testified that, due to the size of the landfill, it was physically impossible for any waste hauler to dump waste within three hundred feet of the adjoining residences.

At the close of the case, all three defendants renewed their motions for directed verdicts. The trial court granted Cleveland's motion, but denied the others.

The matter was then presented to the jury upon certain interrogatories prepared by both parties and accepted by the trial court. Objections were made by both parties concerning other interrogatories not submitted by the court.

Finally, by agreement of the parties and the trial court, no verdict forms were given to the jury. The trial court reached its verdict by interpreting the jury's answers to the interrogatories. The trial court found in favor of defendants on all counts. Plaintiffs then filed a motion for new trial, JNOV, and for relief from judgment, all of which were denied. This appeal timely follows.

## II

For their first assignment of error, plaintiffs contend that the trial court erred in granting a directed verdict in favor of Cleveland.

Directed verdicts are governed by Civ.R. 50(A)(4), which provides in pertinent part that:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

When a motion for a directed verdict is made, what is being tested is a question of law, that is, the legal sufficiency of the evidence to take the case to the jury. This does not involve weighing the evidence or trying the credibility of witnesses. *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 68, 23 O.O.3d 115, 116, 430 N.E.2d 935, 937. It is the duty of the trial court to submit an essential issue to the jury when there is sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue. *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 220, 58 O.O.2d 424, 427, 280 N.E.2d 896, 899.

While negligence actions always involve mixed questions of law and fact, the existence of a duty is, in the first instance, a question of law for the court. *Cements v. Heston* (1985), 20 Ohio App.3d 132, 134–135, 20 OBR 166, 167–169, 485 N.E.2d 287, 289–291.

In the case *sub judice,* the trial court ruled as a matter of law that Cleveland has a duty of reasonable care to the plaintiffs, but that on the facts

presented there was no showing that the duty had been breached because Cleveland had "no control" over operation of the landfill. A finding of negligence would be required under either the negligence or nuisance theory, except if "absolute" nuisance were proven.

Plaintiffs presented evidence that Cleveland was the primary user of the landfill, and that the landfill was improperly operated. Specifically, plaintiffs demonstrated that the landfill had no clay liner, no methane collection or control system, and no reasonable "buffer zone," and used improper blasting to clear areas for the landfill. Plaintiffs further presented evidence that the landfill never operated in accordance with industry standards. None of these facts are controverted by the city. Cleveland established only that the landfill was licensed and that it had "no control" over the operation of the landfill. The question remains for a jury to determine whether Cleveland's reliance on the mere fact that the landfill was licensed and its continued dumping were reasonable, in light of the substandard operation of the landfill. A further question remains whether, if Cleveland was negligent in its continued dumping at the landfill, its negligence substantially contributed to any current nuisance. The directed verdict was clearly inappropriate in light of these remaining questions.

For these reasons, we find that plaintiffs' first assignment of error is well taken.

## III

For their second assignment of error, plaintiffs contend that the trial court erred in entering a general verdict based upon the jury's answers to interrogatories.

Plaintiffs essentially contend under this assignment of error that the court entered a "special verdict." The "special verdict" is a statement by the jury of the facts it has found—in essence, the jury's answers to questions submitted to it; the court determines which party, based on those answers, is to have judgment. Black's Law Dictionary (6 Ed.1990) 1560.

Civ.R. 49(C) commands that "special verdicts shall not be used."

In the case *sub judice,* by agreement of the parties, interrogatories were submitted to the jury, but it was the trial court that was to render a verdict based upon those answers. Interrogatories are generally used to test the correctness of a general verdict, thereby enabling the court to determine as a matter of law whether such verdict will stand. *Coleman v. Excello–Textron Corp.* (1989), 60 Ohio App.3d 32, 572 N.E.2d 856. However, pursuant to Civ.R. 49(A), a trial judge must require a jury to render a general verdict in a civil lawsuit for

damages.  *Schellhouse v. Norfolk & Western Ry. Co.* (1991), 61 Ohio St.3d 520, 527, 575 N.E.2d 453, 458.

■   On the basis of the trial court's error in rendering a "special verdict" below, we have no choice but to reverse this case and remand for a retrial.

For these reasons, we find that plaintiffs' second assignment of error is well taken.

## IV

Plaintiffs' third and fourth assignments of error and Boyas Excavating and Peter Boyas's assignment of error share a common basis in law and fact and will, therefore, be dealt with simultaneously.

For their third assignment of error, plaintiffs contend that the trial court erred when it submitted interrogatories to the jury that were inconsistent with the jury charge on absolute nuisance.  For their fourth assignment of error, plaintiffs contend that the trial court erred by failing to submit plaintiffs' requested nuisance interrogatories to the jury.

Boyas Excavating and Peter Boyas contend that if the court's statements regarding absolute nuisance are interpreted as an instruction on that issue, then the court erred in giving that instruction.

In its charge to the jury, the court gave the following instructions:

"A private nuisance is a non-transpastory [*sic* ] invasion of another's interest in the private use and enjoyment of land.  A nuisance consists in doing an act, or failing to perform a duty, which either annoys, injures or endangers the comfort, health or safety of others, offends decency, or in any way renders their persons insecure in life or in the use of property.

"Nuisance is a question of degree, depending upon varying circumstance.  You must consider the comfort and convenience of persons of ordinary taste and feelings.  You must be guided by the generally accepted standard of comfort and convenience.

"Absolute nuisance is the doing of anything without just cause or excuse, which necessarily interferes with or annoys another in the enjoyment of a person's rights.

"Qualified nuisance is doing anything lawfully but so negligently or carelessly done or permitted that it creates a potential or unreasonable risk or harm, which in due course results in injury to another.

"A defendant is subject to liability for a nuisance caused by an activity not only when he carries on that activity, but also when he participates to a substantial extent in carrying it on.

"If you find by a preponderance of the evidence that a nuisance does exist in this case and that such nuisance was the proximate cause of any damage or injury to plaintiffs' property or person, then a defendant who substantially contributed to the nuisance will be liable.

"If, however, you find by a preponderance of the evidence that there was no nuisance or that any such nuisance was not the proximate cause of damage to the plaintiffs or their properties, then of course you shall find for the defendant or defendants."

At no time did the court state that the definition of absolute nuisance was given to help the jury to better understand qualified nuisance. It is clear, therefore, that the court's comment constitutes an "instruction" to the jury on absolute nuisance. Boyas Excavating and Peter Boyas properly objected to this instruction.

No evidence was presented to the court that would indicate that defendants' operation of the landfill was without "just cause." To the contrary, the evidence was uncontroverted that the landfill was licensed by the proper authorities. It is a general rule that, when there is no evidence to support an issue, no charge should be given thereon. *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 210, 24 O.O.3d 316, 317, 436 N.E.2d 1001, 1003; *Kavash v. Emerald Towers* (June 7, 1990), Cuyahoga App. No. 57037, unreported, 1990 WL 75235. We find that the trial court's instruction on absolute nuisance was improper. We further find that the trial court erred in submitting interrogatories to the jury that were inconsistent with the charge. This error may be corrected on retrial by omitting reference to absolute nuisance in the jury charge.

Finally, we find that the trial court erred in failing to submit any nuisance interrogatories to the jury. While the court acted within its authority in finding that plaintiffs' proposed interrogatories on nuisance were improper, the trial court has the power to reformulate the proposals as it deems necessary. Civ.R. 49(B). Although in this action a negative answer to the negligence interrogatories would be dispositive of both negligence and nuisance claims, an affirmative answer to the negligence interrogatories would require further inquiry on the nuisance issue. The trial court should not have placed itself in such a position by submitting incomplete interrogatories.

Based upon the foregoing, we find that plaintiffs' third assignment of error is not well taken, plaintiffs' fourth assignment of error is well taken, and Boyas Excavating and Peter Boyas's assignment of error is well taken.

## V

For its sole assignment of error, Cleveland contends that the trial court erred in denying its supplemental and renewed motion for summary judgment.

On March 29, 1990, Cleveland filed a motion for leave to file a supplemental and renewed motion for summary judgment. On June 6, 1990, the trial court denied Cleveland's motion for leave, pointing out that the new matter raised, the statute of limitations, should have been argued in Cleveland's previously denied motions to dismiss and for summary judgment. Cleveland's appellate brief does not raise this issue as error or argue it under this assignment of error. Instead, Cleveland mistakenly argues that the trial court erred in denying the supplemental motion itself.

This court, in *North Coast Cookies, Inc. v. Sweet Temptations, Inc.* (1984), 16 Ohio App.3d 342, 16 OBR 391, 476 N.E.2d 388, established that an assignment of error which is not separately argued will be disregarded.

"App.R. 12(A) directs this court to determine the merits of appeals 'on the assignments of error set forth in the briefs required by Rule 16.' App.R. 12(A) further provides:

" ' * * * Errors not specifically pointed out in the record *and separately argued by brief may be disregarded.* All errors assigned and briefed shall be passed upon by the court in writing, stating the reasons for the court's decision as to each such error.' (Emphasis added.)

"The 'Assignments of Error' should designate specific rulings which the appellant challenges on appeal. They may dispute the final judgment itself or other procedural events in the trial court. The 'Statement of Issues' should express one or more legal grounds to contest the procedural actions challenged by the assigned errors. They may subdivide questions presented by individual assigned errors, or they may be substantially equivalent to the assigned errors." *Id.* at 343–344, 16 OBR at 392–393, 476 N.E.2d at 391.

In addition, the Supreme Court of Ohio, in *Hawley v. Ritley* (1988), 35 Ohio St.3d 157, 519 N.E.2d 390, established that the failure to separately brief and argue an assignment of error pursuant to App.R. 12(A) can result in the overruling of the particular unbriefed error.

" * * * In our view, the court of appeals acted well within its discretion in overruling or disregarding the sixth assignment of error because given the lack of briefing on this assigned error, the plain language of * * * [App.R. 12(A)] permits such a disposition. As this court stated on a prior occasion, 'errors not treated in the brief will be regarded as having been abandoned by the party who

gave them birth.' *Uncapher v. Baltimore & Ohio Rd. Co.* (1933), 127 Ohio St. 351, 356, 188 N.E. 553, 555." *Id.,* 35 Ohio St.3d at 159, 519 N.E.2d at 392.

For these reasons, we must disregard this assignment of error.

*Judgment reversed*
*and cause remanded.*

JAMES D. SWEENEY, J., concurs.

NAHRA, P.J., dissents in part.

NAHRA, Presiding Judge, dissenting in part.

I respectfully dissent from that part of the judgment which reverses the verdict in favor of Boyas Excavating and Peter Boyas, and remands the case for a new trial. The majority claims that the court erred by failing to submit general verdict forms to the jury pursuant to Civ.R. 49. However, the majority also states, and the record reflects, that the parties stipulated that only interrogatories would be submitted to the jury, and that the court would enter judgment according to the interrogatories. Appellants objected to the court's refusal to submit some of their interrogatories to the jury. They did not object to the lack of general verdict forms. In fact, appellants specifically assented to the judge's statement that they had agreed to submit interrogatories but not general verdict forms to the jury, and that the court would enter judgment based on the jury's answers to interrogatories.

Appellants did not object to the lack of a general verdict until their second posttrial motion. At that time, counsel for appellants admitted that he had agreed to the procedure of having the judge enter judgment according to the interrogatories without a general verdict. He claimed that his agreement was conditional, based on his assumption that all of his interrogatories would be submitted to the jury. However, that condition appears nowhere in the record.

Formal defects in a jury's verdict, as distinguished from defects in substance, do not affect the rights of the parties or the merits of the case. *Barnes v. Prince* (1974), 41 Ohio App.2d 244, 245, 70 O.O.2d 454, 454, 325 N.E.2d 252, 253. A verdict is defective in form only where the jury's intent is clear and obvious to the court. '*Id.* at 247, 70 O.O.2d at 455, 325 N.E.2d at 254. In *Barnes,* the jury returned a verdict form which read "for the plaintiff in the sum of $ None." The judge asked the jury whether it found both parties at fault, and the answer was yes. After polling the jury, which confirmed the verdict, the court entered judgment for the defendant. This court affirmed the trial court's judgment on appeal, because it was clear from the verdict that the plaintiff had not prevailed. The jury's intent was clear despite the defect on the verdict form. See, also, *Schaller v. Chapman* (App.1943), 44 Ohio Law Abs. 631, 66 N.E.2d 266 (a jury's

verdict finding for the plaintiff on its cross-petition but also stating that " '[w]e find them each one equally guilty and each to assume their own damage' " clearly was a finding against both parties, and a formal defect only).

In this case, unlike *Schellhouse v. Norfolk & Western Ry. Co.* (1991), 61 Ohio St.3d 520, 575 N.E.2d 453, there was no inconsistency in the jury's answers to the interrogatories, and their intent to find for defendants was clear. Furthermore, the parties clearly stipulated on the record to the use of special interrogatories without general verdict forms. Since appellants agreed to this procedure on the record without conditions, they waived error. *First Fed. S. & L. Assn. of Akron v. Cheton & Rabe* (1989), 57 Ohio App.3d 137, 567 N.E.2d 298, paragraph four of the syllabus (errors not raised when they can be avoided or corrected are considered waived on appeal). Accordingly, I dissent from Part III of the majority's decision.