COLASANT et al., Appellants,

v.

OLMSTED TOWNSHIP et al., Appellees.

[Cite as *Colasant v. Olmsted Twp.* (1994), 95 Ohio App.3d 605.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 65200.

Decided June 20, 1994.

*Mark Fusco,* for appellants.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Timothy J. Kollin,* Assistant Prosecuting Attorney, for appellees.

DONALD C. NUGENT, Judge.

This is an appeal from a final judgment of the Cuyahoga County Court of Common Pleas, which refused to declare that the defendants-appellees, Olmsted Township and the Olmsted Township Trustees (hereinafter "the township"), have exceeded their statutory grant of authority and are illegally spending tax revenue by expending money from the township's general fund to provide solid waste collection and disposal services.

Plaintiff-appellant Henry Colasant brought the present class action suit for declaratory relief, injunctive relief, and damages on behalf of himself and all others similarly situated (hereinafter "appellants"). Appellants are taxpayers and residents of manufactured housing parks in Olmsted Township. Appellants alleged that the township exceeded its statutory grant of authority by exclusively using sums from the township's general fund to finance the waste collection services for the township.[1]

Without objection, the trial court certified the class of approximately seven hundred members, and the parties agreed to submit the issue of liability to the trial court on briefs. The parties entered into stipulations and agreed to use the township's answers to appellants' interrogatories as evidence. The undisputed facts follow.

Olmsted Township contains three manufactured housing parks—Columbia Trailer Park, containing nine hundred units; Foster's, containing seventy-five units; and Olmsted, containing one hundred thirty units. The owners of these units pay taxes and assessments to the township by virtue of their ownership of manufactured housing. The township is also home to manufactured housing located on private residential lots outside the three manufactured housing parks.

---

1. Appellants also raised an equal protection claim which was denied. Appellants do not appeal the trial court's decision on that claim.

The owners of these units also pay taxes and assessments to the township by virtue of their ownership of manufactured housing. Moreover, the taxes and assessments levied upon owners of manufactured housing located in housing parks and manufactured housing located on individual lots are identical. Despite this fact, the residents of manufactured housing parks do not receive the same level of solid waste disposal services that residents of manufactured housing located on private lots enjoy.

Olmsted Township does not utilize its own employees for garbage collection. Instead, the township trustees have entered into a contract with a private hauler of solid waste for refuse collection within the territorial limits of the township. This contract was entered into on May 21, 1990 and continued through May 31, 1993. Pursuant to this contract, the private hauler, Browning Ferris Industries, picked up the solid waste generated by residents of one-, two-, and three-family dwelling units and mobile homes located on individual private lots. However, the contract did not provide for garbage collection for residents of manufactured homes located in manufactured housing parks. It is undisputed that all owners of manufactured homes in Olmsted Township pay taxes and assessments to the township by virtue of their ownership of a manufactured home. It is also undisputed that residents of manufactured housing who reside in manufactured housing parks are taxed and assessed for their ownership of a manufactured home.

Browning Ferris Industries charged the township $16,340 per month for solid waste pickup and disposal. The township paid this monthly bill out of the general fund. This fund received its revenue in part from tax payments made by all residents of the township who reside in manufactured housing.

The township does not levy a separate tax to finance waste collection or disposal services and does not levy any charge or cost upon persons, firms or corporations who are provided with solid waste collection and disposal services.

Based on the foregoing, the trial court denied the requested relief. Appellants timely appeal, raising the following assignment of error for our review:

"The trial court abused its discretion by failing to declare that the township trustees exceeded their statutory grant of authority by paying for waste collection services exclusively with money from the township's general fund."

Appellants argue that the township's current practice of using moneys from the general fund to pay for the services of an independent contractor to collect and dispose of solid waste is unfair to the residents of the manufactured housing parks and exceeds the township's statutory grant of authority. Appellants contend that it is unfair that they pay taxes into the general fund by virtue of their ownership of manufactured homes while, at the same time, they do not

benefit from the services of the independent contractor and are not provided solid waste collection and disposal services by the township.

Appellants further argue that, in the present case, the township is only permitted to expend moneys from a special "waste collection fund" for such services and that such fund is to be derived from equitable charges of rent imposed on every person, firm or corporation whose premises are served by the independent contractor. Appellants add that because a specific statute authorizes expenditures for such services from a "waste collection fund," the township is, therefore, prohibited from expending funds for such services from the township's general fund.

The trial court disagreed and found nothing improper or illegal about the township's current practice. The issue of whether a township may expend moneys from the township's general fund for solid waste collection and disposal services received from an independent contractor appears to be one of first impression for an Ohio court. However, in an opinion issued by the Ohio Attorney General, it was determined that "[a] board of township trustees may expend moneys from the township's general fund for the purpose of supplementing the fees charged to those persons availing themselves of garbage and refuse collection and disposal services provided, maintained, and operated by the board [on] behalf of the township." See 1984 Ohio Atty.Gen.Ops. No. 84–024. We agree with the Attorney General opinion and the reasoning applied therein.

It is undisputed that a township, through its trustees, may enter into written contracts with independent contractors for the collection, transfer and disposal of solid waste. Former R.C. 505.27[2] provided, in pertinent part:

"Boards of township trustees, either severally or jointly, may provide, maintain, and operate facilities for the collection, transfer, and disposal of solid wastes or may enter into written contracts with the proper municipal or county authorities or with independent contractors for such services for the township or for a waste disposal district as provided in section 505.28 of the Revised Code."

A township is granted express authority to establish equitable charges of rent to pay for the services of an independent contractor to collect or dispose of solid waste. When a waste disposal district has not been established pursuant to R.C. 505.28, R.C. 505.29 provides, in pertinent part:

---

2. R.C. 505.27 was amended by H.B. No. 723, effective April 16, 1993. The amendment affected the second paragraph of R.C. 505.27 concerning solid waste management districts. Because the present case does not involve a solid waste management district, that section of R.C. 505.27 is not relevant to our consideration. See R.C. 505.28 for a township's authority to create a solid waste management district.

"In the alternative the board of any township which has provided or contracted for the collection or disposal of garbage or refuse on behalf of the township or any district may, by resolution, establish equitable charges of rents to be paid such township, for the use and benefit of such service, by every person, firm, or corporation whose premises are so served. Such charges shall constitute a lien upon the property served, and, if not paid when due, shall be collected in the same manner as other township taxes."

To begin, we note that the pertinent provisions of R.C. 505.29 do not require that a township establish equitable charges of rent but, rather, state that a township "may" establish equitable charges of rent, to be paid to the township by every person, firm or corporation whose premises are benefited by such services. On the other hand, once a township imposes equitable charges of rent, it must keep such moneys in a separate fund designated the "waste collection fund." Former R.C. 505.31 [3] provides, in pertinent part:

"The township clerk shall collect the service charges for waste disposal service and administer them under rules and regulations established by the board of township trustees. All such moneys shall be kept in a separate fund designated as 'the waste collection fund,' and shall be appropriated and administered by the board. Such funds shall be used for payment of the costs of the management, maintenance, and operation of the garbage and refuse collection and disposal system in the township or several waste disposal districts. Funds collected from one district cannot be used for any other district. If a district is abandoned or discontinued, any balance remaining in the fund for that district shall be paid into the general fund of the township."

██ Based on the foregoing, it is undisputed that a township, through its trustees, may enter into a contract with an independent contractor for the collection or disposal of solid waste. R.C. 505.27. Once such a contract is entered into, a township may establish equitable charges of rent for such services on every person, firm or corporation whose premises are served. R.C. 505.29. Such charges must then be kept in a separate fund designated "the waste collection fund," and such fund must be used to pay for such services. R.C. 505.31.

The township, however, argues that the above statutes do not provide the only means to pay for such services. The township argues that it may expend moneys from the general fund for the services of an independent contractor.

---

3. R.C. 505.31 was amended by S.B. No. 125, effective April 16, 1993. Subsection (B) was added to allow an independent contractor to directly collect and keep the service charges for the waste disposal services provided by the independent contractor.

It is undisputed that a township is required to establish a general fund. R.C. 5705.09(A). Additionally, property taxes collected from manufactured homes are paid into the township's general fund. R.C. 4503.06(A).

Moneys paid into the general fund are to be expended for current expenses of any kind. R.C. 5705.05 states:

"The purpose and intent of the general levy for current expenses is to provide one general operating fund derived from taxation from which any expenditures for current expenses of any kind may be made, and the taxing authority of a political subdivision may include in such levy the amounts required for carrying into effect any of the general or special powers granted by law to such subdivision, including the acquisition or construction of permanent improvements and the payment of judgments, but excluding the construction, reconstruction, resurfacing, or repair of roads and bridges in counties and townships and the payment of debt charges. The power to include in the general levy for current expenses additional amounts for purposes for which a special tax is authorized shall not affect the right or obligation to levy such special tax. * * * "

The definition of "current operating expenses" is found in R.C. 5705.01(F), which provides:

" 'Current operating expenses' and 'current expenses' mean the lawful expenditures of a subdivision, except those for permanent improvements, and except payments for interest, sinking fund, and retirement of bonds, notes, and certificates of indebtedness of the subdivision."

"Permanent improvements" is defined in R.C. 5705.01(E) as follows:

" 'Permanent improvement' or 'improvement' means any property, asset, or improvement with an estimated life or usefulness of five years or more, including land and interests therein, and reconstructions, enlargements, and extensions thereof having an estimated life or usefulness of five years or more."

■ It is not contended that a contract for the collection and disposal of solid waste is an expenditure for a permanent improvement. Nor are we directed to any section of the Revised Code which would make such expenditure an unlawful expenditure. Appellants' only contention is that the expenditure is made from the wrong township fund and that, in this light, it is unlawful. Indeed, R.C. 5705.05 contemplates that a township may expend money from the general fund for purposes for which a special tax is authorized. Specifically, moneys in the general fund may be used "for carrying into effect any of the general or special powers granted by law to such subdivision * * *, [and t]he power to include in the general levy for current expenses additional amounts for purposes for which a special tax is authorized shall not affect the right or obligation to levy such special tax." (Emphasis added.)

Because payments for the contract for solid waste collection and disposal services are a "lawful expenditure," it must be considered a current operating expense, and such payments may be made from the general fund. We, therefore, hold that a township may expend moneys from the general fund to pay an independent contractor for the ·collection and disposal of solid waste.

Appellants argue that the express enumeration of the township's specific duties in R.C. 505.28 through 505.31 implies that the legislature intended to exclude all other methods of payment. See *Ft. Hamilton–Hughes Mem. Hosp. v. Southard* (1984), 12 Ohio St.3d 263, 12 OBR 342, 466 N.E.2d 903. Appellants' reliance on *Southard*, however, is misplaced. *Southard* presented an equal protection claim under the Fourteenth Amendment to the United States Constitution and held that the classification of specific classes of persons in a statute necessarily implied that the legislature intended to exclude other classifications of persons. It did not hold that the enumeration of a township's duties in a specific statute implies that the legislature intended to exclude all other methods of payment.

Additionally, appellants argue that the township failed to raise R.C. Chapter 5705 in the court below. Ordinarily, an appellate court will not consider issues not presented in the court below. *First Fed. S. & L. Assn. of Akron v. Cheton & Rabe* (1989), 57 Ohio App.3d 137, 567 N.E.2d 298. However, the trial court relied on the previously cited Attorney General opinion, No. 84–024, in reaching its decision and was, therefore, well aware of R.C. Chapter 5705.

Finally, appellants argue that the more specific statutes of R.C. 505.28 through 505.31 prevail over the general statutes contained in R.C. Chapter 5705. See R.C. 1.51, which provides that a special provision take precedence over a general provision where there exists a conflict between the two. However, as we have previously determined, there is no conflict between R.C. Chapter 505 and Chapter 5705.

The trial court did not err in dismissing appellants' complaint, and appellants' sole assignment of error is overruled.

*Judgment affirmed.*

PATTON, P.J., and PATRICIA BLACKMON, J., concur.