SCHELLHOUSE, ADMX., APPELLANT, *v.* NORFOLK & WESTERN RAILWAY COMPANY, APPELLEE, ET AL.

[Cite as *Schellhouse v. Norfolk & Western Ry. Co.* (1991), 61 Ohio St.3d 520.]

(No. 90–1513—Submitted April 10, 1991—Decided August 21, 1991.)

*Murray & Murray Co., L.P.A., Thomas J. Murray* and *Nancy L. Ogden, Williams & Williams* and *Mark R. Williams,* for appellant.

*Flynn, Py & Kruse Co., L.P.A.,* and *Charles W. Waterfield,* for appellee.

HERBERT R. BROWN, J.  For the reasons which follow, we reverse the judgment of the court of appeals and remand this case for a new trial.  The difficulty faced by the trial court, the court of appeals, and now this court, stems from the failure to follow Civ.R. 49 in the trial of this case.  Our analysis starts at that point.

This case was submitted to the jury as a set of five interrogatories, with no instruction or form given the jury directing it to return a general verdict. This resulted in what is known as a "special verdict."  See Black's Law Dictionary (6 Ed.1990) 1560.

Civ.R. 49(C) commands that "[s]pecial verdicts *shall not* be used." (Emphasis added.) This prohibition was written into the Rules of Civil Procedure in response to the many difficulties encountered with special verdicts in pre-Rule civil practice. See Staff Note to Civ.R. 49. Civ.R. 49(A) provides: "A general verdict, by which the jury finds generally in favor of the prevailing party, shall be used." In place of the old special verdict, the drafters provided, in Civ.R. 49(B), for the use of interrogatories in combination with the general verdict as a means of attaining the perceived advantages of the special verdict while avoiding its disadvantages. See Staff Note, *supra.*

The instant case demonstrates the wisdom of adherence to Civ.R. 49(C). The jury's answers to Interrogatory Nos. 4 and 5 are impossible to reconcile. Either the railroad committed an intentional tort or it did not. If it did, on the record before us, we do not see how the jury could have concluded that the negligence "attributable" to the railroad was only thirty-five percent. Further, the jury made no finding that the acts of the railroad which constituted "actual malice" were a proximate cause of the accident. Nor did the jury specifically find that defendant's acts constituted an intentional tort.

The trial judge was also, it would appear, confused by the answers to these interrogatories. The trial judge attempted to resolve the confusion by entering a verdict for the plaintiff in the amount of thirty-five percent of the total damages which the jury found. This attempted compromise, as the court of appeals noted, is not permissible.

If the railroad did not commit an intentional tort, but was only thirty-five percent negligent as opposed to the sixty-five percent attributed to the plaintiff's decedent, then the plaintiff is not entitled to damages and a verdict for the defendant should have been entered. R.C. 2315.19(C).

If the railroad committed an intentional tort with malice and if that intentional tort was the proximate cause of plaintiff's damage, the negligence of the plaintiff's decedent is not a defense and the plaintiff would have been entitled to a full recovery, not merely thirty-five percent. Acts committed with actual malice constitute behavior qualitatively different from that which may be characterized as merely negligent.[1] Accordingly, prior to the adoption

---

1. Interrogatory No. 5 required the jury to determine whether the defendant's "actions or inactions" constituted actual malice. There was no interrogatory requiring the jury to determine whether the defendant committed an intentional tort. Our analysis in this case, therefore, must be in terms of defendant's malice. The interrogatory answers, coupled with the evidence of record, make it necessary to remand the case for retrial. Thus we need not consider at this time whether a defendant's intentional tort, without a specific finding of malice, would negate a comparative negligence defense. Nor do we need wrestle with the hypothetical

of R.C. 2315.19, the absolute bar to recovery which attached to the defense of contributory negligence was unavailable where the acts of the defendant were reckless or intentional. Thus, in *Kellerman v. J.S. Durig Co.* (1964), 176 Ohio St. 320, 27 O.O.2d 241, 199 N.E.2d 562, paragraph three of the syllabus provided:

"Where wanton misconduct on the part of a defendant existed, negligence on the part of the plaintiff is not available as a defense." See, also, *Payne v. Vance* (1921), 103 Ohio St. 59, 133 N.E. 85, paragraph four of the syllabus.

Contributory negligence, prior to the enactment of R.C. 2315.19, did not bar recovery in an action predicated upon the willful, wanton or reckless conduct of a defendant. Likewise, the provisions of the statute which operate to prevent or reduce the recovery of a plaintiff due to her comparative negligence should not apply in such a case. Accordingly, in a civil action for tort or wrongful death, a finding by the jury that a plaintiff (or plaintiff's decedent) was comparatively negligent will not defeat or diminish the recovery of damages where the defendant's intentional tort, committed with actual malice, proximately caused the injury.

Apparently the trial judge questioned, and we do too, whether the jury intended a finding of actual malice.[2]

The evidence of record, even when taken in favor of the plaintiff, is barely sufficient to withstand the defendant's motion for directed verdict on the malice issue. Clearly the railroad did not intend the accident which happened. The inference can be drawn, however, that the railroad did deliberately ignore governmental warnings concerning the crossing and did deliberately choose to

---

question of whether negligent acts committed with malice could be anything less than an intentional tort.

2. In *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus, actual malice was defined as: "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, *or* (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." (Emphasis *sic*.) Moreover, in *Staff Builders, Inc. v. Armstrong* (1988), 37 Ohio St.3d 298, 304, 525 N.E.2d 783, 789–790, the following observation was made on the subject:

"Actual malice is defined as ' " ' " "that state of mind under which a person's conduct is characterized by hatred or ill will, a spirit of revenge, retaliation or a determination to vent his feelings upon other persons." ' " ' *Columbus Finance, Inc. v. Howard* (1975), 42 Ohio St.2d 178, 184, 71 O.O.2d 174, 177, 327 N.E.2d 654, 658; *Pickle v. Swinehart* (1960), 170 Ohio St. 441, 443, 11 O.O.2d 199, 200, 166 N.E.2d 227, 229. Alternatively, actual malice has been described as 'extremely reckless behavior revealing a conscious disregard for a great and obvious harm.' *Preston v. Murty* (1987), 32 Ohio St.3d 334, 335, 512 N.E.2d 1174, 1175. The presence of actual malice need not be expressed but 'may be inferred from conduct and surrounding circumstances.' *Columbus Finance, Inc., supra*, at 184, 71 O.O.2d at 177, 327 N.E.2d at 658."

leave in place a dangerous crossing, with consequent risk to the highway public.

However, the greater weight of the evidence suggests that the railroad did not act with malice. Further, the element of proximate cause is missing from the answer to the "malice" interrogatory. The foregoing, when coupled with the jury finding that the railroad's "negligence" was only a thirty-five percent cause of the accident, leads us to the conclusion that a retrial is the only fair result. Because of the failure to follow Civ.R. 49(A), we are uncertain whether the jury has resolved the questions relating to malice versus negligence and the questions of proximate causation which must follow.

The option of awarding thirty-five percent of the total damages to the plaintiff was not legally available to either the jury or the trial judge.

Had the jury been required to return a general verdict as mandated by Civ.R. 49(A) we would not be in the present quagmire. If the jury had returned a general verdict for the total amount of damages, we would have known whether the jury found that the railroad had committed an intentional tort with malice and whether the jury properly followed the law by not reducing the award by reason of the negligence of the plaintiff's decedent.

Had the jury returned a general verdict for the defendant, the trial judge would have to suspect that the jury, in answering the interrogatory with respect to malice, was really only affirming the determination that the railroad was reckless or that the railroad's malice was not a proximate cause of the accident. In this situation the trial judge could have followed one of the three options provided by Civ.R. 49(B), which provides in part:

" * * * When one or more of the answers is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial."

Similarly, if the jury had returned a general verdict in an amount equal to thirty-five percent of the total damages, the trial judge could have seen the confusion and followed one of the options provided by Civ.R. 49(B).

Without a general verdict to tell us what overall result the jury intended, however, there is no hope, on this record, of reconciling the interrogatory answers. The judgment entered by the trial judge cannot be sustained. An attempt by us to reconstruct the jury's reasoning would be speculation. Our only option is to remand the case.

In a span of six months, three cases have been argued before this court which were tried in violation of Civ.R. 49(A): the instant case; *O'Connell v.*

*Chesapeake & Ohio R.R. Co.* (1991), 58 Ohio St.3d 226, 569 N.E.2d 889; and *Calmes v. Goodyear Tire & Rubber Co.* (1991), 61 Ohio St.3d 470, 575 N.E.2d 416. In failing to comply with Civ.R. 49(A), the parties and trial courts in these cases ran the risk that the case would be reversed because of the Civ.R. 49 violation.[3] The resulting expense and waste of judicial resources should be obvious. We hold that compliance with Civ.R. 49(A) is mandatory. A trial judge must require the jury to return a general verdict in a civil action for damages.

Since this case is remanded for retrial, we need not address at length the assignments of error relating to (1) the airhorn demonstration and (2) testimony by a policeman that he would have cited plaintiff's decedent had she lived. The latter is clearly improper and, we trust, will not be offered as evidence on retrial.

The airhorn demonstration, in our opinion, was sufficiently supported by the evidence of record to bring the decision to allow or disallow it within the sound discretion of the trial judge. We express no opinion on how the trial judge, on a retrial and on newly developed evidence, should rule.

The judgment of the court of appeals is reversed and the cause is remanded for retrial.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., WRIGHT and RESNICK, JJ., concur.

HOLMES, J., concurs separately.

SWEENEY and DOUGLAS, JJ., concur in judgment only.

HOLMES, J., concurring. I am in total agreement with Justice Brown relative to the issue of malice, in that the record is completely devoid of any evidence of actual malice upon the part of the defendant. Certainly, the standards for the finding of malice under this court's holding in *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, have not been established.

Accordingly, I would prefer entering judgment for the defendant; however, in order to resolve the matter I shall concur in the remand.

DOUGLAS, J., concurring in judgment only. In part, the majority says, "[h]owever, the greater weight of the evidence suggests that the railroad did not act with malice. * * * " Our task is not to weigh the evidence in this case—even in *dictum.* That responsibility will be undertaken, by a jury, on

---

3. Though we noted that a violation of Civ.R. 49 had occurred, *O'Connell* was decided on different grounds. See *O'Connell,* 58 Ohio St.3d at 230, 569 N.E.2d at 893, fn. 1.

remand. In *Chemical Bank of New York v. Neman* (1990), 52 Ohio St.3d 204, 207, 556 N.E.2d 490, 494, we said that "[t]his court is not required to determine the weight of evidence in civil matters, R.C. 2503.43, and ordinarily will not do so. *State, ex rel. Kobelt, v. Baker* (1940), 137 Ohio St. 337, 18 O.O. 521, 29 N.E.2d 960. * * * " There is no reason in this case to violate this sound rule, especially where the majority opinion seems to be internally contradictory when, in an earlier sentence, it is stated that " * * * [t]he inference can be drawn, however, that the railroad did deliberately ignore governmental warnings concerning the crossing and did deliberately choose to leave in place a dangerous crossing, with consequent risk to the highway public."

SWEENEY, J., concurs in the foregoing opinion.