WIGHTMAN, Admr., et al., Appellees and Cross–Appellants,

v.

CONSOLIDATED RAIL CORPORATION et al., Appellants and Cross–Appellees.

[Cite as *Wightman v. Consol. Rail Corp.* (1994), 94 Ohio App.3d 389.]

Court of Appeals of Ohio,
Erie County.

No. E–92–75.

Decided April 15, 1994.

*Thomas Murray, Nancy Ogden* and *James Hart,* for appellees and cross-appellants.

*Philip Howes, Donald Wiley* and *Thomas Himmelspach,* for appellants and cross-appellees.

ABOOD, Presiding Judge.

This is an appeal and cross-appeal from a judgment of the Erie County Court of Common Pleas which, following a jury trial, awarded $1,000,000, the amount of the jury verdict, in compensatory damages to the estate of Michelle Wightman.

Defendant-appellant Consolidated Rail Corporation ("CRC") sets forth the following assignments of error:

"I. The trial court erred in failing to direct a verdict in appellant's favor at the close of all the evidence, finding the negligence of plaintiff's decedent was the sole proximate cause of the accident at issue.

"II. The trial court erred and denied appellant a fair trial as a matter of law in connection with the jury charge as follows:

"1. In refusing to instruct and submit appellant's interrogatory to the jury regarding the willful and wanton misconduct of the decedent and in giving a punitive damage charge as to appellant;

"2. In failing to instruct and submit appellant's interrogatory to the jury concerning the intervening and superceding acts of the City of Sandusky Police Department;

"3. By instructing the jury in a contradictory and confusing manner and in providing erroneous instructions of law;

"4. By failing to submit required verdict forms to the jury; and

"5. In other instructional errors manifested in the record..

"III. The trial court erred and denied appellant a fair trial in the admission of evidence as follows:

"1. By admitting over objection expert's opinions inadmissible under Rules of Evidence 701 through 705;

"2. By admitting over objection testimony of plaintiff's witnesses on matters of law and on facts not of record;

"3. In permitting plaintiff's witnesses to testify over objection as to the private, inter-company rule of defendant.

"IV. Other errors at law occurring at time [of] trial and brought to the attention of the trial court by the appellant."

Plaintiffs-appellees, Darlene M. Wightman, administrator of the estate of Michelle L. Wightman, deceased, and Darlene M. Wightman, individually, set forth the following assignments of error on cross-appeal:

"I. The trial court erred by refusing to submit the issue of punitive damages to the jury on Darlene Wightman's property damage claim.

"II. The trial court erred in refusing to award punitive damages, attorneys fees, and costs to Darlene Wightman.

"III. The trial court erred in refusing to order Conrail to pay interest at the statutory rate on one million dollars from the date of the jury's verdict or, in the alternative, for each day entry of judgment has been delayed as a result of defendants' motion to disqualify."

The facts that are relevant to the issues raised on appeal are as follows. On February 19, 1989, at approximately 12:05 a.m., the decedent, Michelle Wightman, was driving her mother's 1985 Ford southwest on Remington Avenue approaching a railroad crossing in the city of Sandusky. A short distance to the east of the crossing, a train owned and operated by CRC was stopped for repairs on the tracks closest to Michelle. When she got to the crossing, the gates were down and the red lights were flashing. Michelle proceeded to drive around the gates and began to cross the railroad tracks when another train owned by CRC that was traveling westbound on a second set of tracks appeared from behind the stopped train and struck Michelle's car, killing her and her passenger instantly.

On September 12, 1989, Michelle's mother, appellee Darlene Wightman, acting both in her capacity as administrator of Michelle's estate and individually, brought suit against CRC and the train's engineer, appellant Louis Nelson. The complaint set forth two causes of action. The first cause of action contained four counts. Count one set forth a claim for wrongful death which alleged: (1) that CRC was negligent in permitting the stopped train to stand in such close proximity to the crossing and obstruct the ability of motorists to observe a second train approaching without taking reasonable precautions to protect motorists; (2) that CRC was negligent in operating a train at a speed which created a foreseeable risk of injury or death; (3) that CRC was negligent in failing to train and advise its crews as to what reasonable measures should be taken in such circumstances to protect motorists; and (4) that Nelson was negligent in failing to reduce the speed of his train as he approached the crossing, in failing to notify the crew of the disabled train that he was approaching the crossing at such a high rate of speed and in failing to give adequate warning to motorists that his train was approaching the crossing.[1]

Count two of the first cause of action set forth a survivorship claim.[2] Count three of the first cause of action set forth a claim for funeral and burial expenses.[3]

In count four of the first cause of action, appellees alleged: (1) that CRC had habitually permitted similar circumstances to exist at various points in its system which has resulted in numerous deaths and injuries; (2) that CRC failed to take reasonable steps to protect motorists at the crossing, despite the fact that it had actual knowledge for approximately one hour prior to the decedent's death, that a situation existed in which harm was certain or substantially certain to occur; and

---

1. Although there is no judgment entry in the record which dismissed Nelson, at the conclusion of the evidence the parties stipulated that Nelson could be dismissed from the case.

2. There is no judgment entry in the record which dismissed this claim, however, it does not appear that it was pursued at trial since the evidence did not support such a claim.

3. There is no judgment entry in the record as to any disposition on this claim.

(3) that these acts and omissions constitute an intentional, wanton and reckless disregard for human life and the safety of the public, which conduct bars appellants from avoiding liability in this action because of any alleged acts or omissions on the part of the decedent. For their first cause of action appellees requested a minimum of $79,500 in compensatory damages.

The complaint's second cause of action set forth Darlene Wightman's personal claim for property damage, for the loss of her automobile as a result of appellants' negligence and "intentional, wanton and reckless misconduct." For this cause of action, appellee Darlene Wightman requested compensatory damages in excess of $1,000 and as well as punitive damages in excess of $25,000.

On December 18, 1989, appellants filed their answer and on October 3, 1990, appellees filed an amended complaint which amended their requests for compensatory and punitive damages. On October 16, 1990, the case proceeded to trial by jury. At the conclusion of appellees' case, appellants moved for a directed verdict, which the trial court denied. At the conclusion of all of the evidence, the court denied both appellants' renewed motion for a directed verdict and appellees' motion for directed verdict. The case was then submitted to the jury with eight interrogatories.

On October 30, 1990, the jury entered a verdict in favor of the estate of the decedent in the amount of $1,000,000. By its response to the interrogatories, the jury: (1) found that the $1,000,000, exclusive of funeral and burial expenses, would compensate the estate of the decedent without regard to the negligence of either party; (2) apportioned the negligence of the parties to the accident as sixty percent to appellant CRC and forty percent to the decedent; (3) found that appellant CRC "authorized, participated in, or ratified actions or omissions of an agent or servant that demonstrated 'malice' * * * and that such malice was, by clear and convincing evidence a proximate cause of the accident"; and (4) found that appellant CRC should be liable for punitive damages.

On October 31, 1990, the court filed its judgment entry which set a hearing on the punitive damages for November 3, 1990. On November 13, 1990, before the proceedings on punitive damages were concluded, appellants' attorney filed an affidavit of bias or prejudice against the trial judge in the Supreme Court of Ohio. Because of this filing, the trial court stayed further proceedings on the case pending determination of the issue of disqualification. On February 11, 1991, the affidavit of disqualification was found not well taken. On May 20, 1991, the trial court filed its judgment entry which set a further hearing on the punitive damages for June 14, 1991. After further continuances, the hearing on punitive damages was ultimately held on August 9 and September 20, 1991.

Prior to that hearing taking place, however, on June 10, 1991, CRC filed a motion for judgment notwithstanding the verdict as to the punitive damage

award. In support of its motion, CRC argued that: (1) punitive damages are not recoverable in a wrongful death case and therefore punitive damages could only be awarded as to Darlene Wightman's property damage claim; (2) Wightman could only prevail on her claim for compensatory damages if the jury determined that CRC's negligence exceeded Michelle Wightman's; (3) since the trial court refused to charge the jury on CRC's defense of comparative negligence and the jury never considered that issue, no judgment can be properly entered on her property damage claim and, therefore, the punitive damage award was not proper; (4) punitive damages cannot be awarded on Darlene Wightman's claim since no verdict was ever entered in her favor; (5) while the parties did stipulate as to the amount of compensatory damages to which Darlene would be entitled upon a finding of liability, there was no stipulation as to liability on that claim; (6) there is no evidence in the record from which the jury could properly have found that CRC acted with malice and, therefore, the punitive damage award was not proper; and (7) that the award of punitive damages is unconstitutional since it violated the Due Process and Excessive Fines Clauses of the United States Constitution.

On November 21, 1991, appellants filed a "post-trial consolidated brief and motion for new trial." In this brief, appellants set forth the issues in the case that remained to be resolved before the entry of final judgment, which included: (1) appellees' request for attorney fees, costs and interest on the award from the date of the verdict; (2) whether appellee Darlene Wightman was entitled to a punitive damage award since there was no judgment entry or verdict on her property damage claim; and (3) whether appellee Darlene Wightman was entitled to a punitive damage award based upon the amount of actual damages that she sustained. Appellants also requested a new trial in order to "prevent a manifest miscarriage of justice," primarily citing the issue of the decedent's comparative fault and the fact that the jury was not instructed that the decedent's conduct could have been found to be willful and wanton.

On February 11, 1992, the trial court filed a judgment entry in which it summarily denied CRC's motion for judgment notwithstanding the verdict without setting forth any reason for the denial. On November 10, 1992, the trial court filed a judgment entry in which it summarily denied appellants' motion for new trial, again without setting forth any reasons. In that same entry the trial court entered judgment in favor of the estate of Michelle Wightman in the amount of the jury's verdict of $1,000,000 in compensatory damages, but awarded no punitive damages. The trial court noted on the judgment entry that there was no just cause for delay. Thereafter both parties filed a notice of appeal.

Before we address the parties' specific assignments of error, this court feels compelled to state that it has been difficult at best to consider the issues raised

on appeal due to the failure of the trial court to set forth in its various judgment entries any basis for its denials of the parties' motions or the basis for its denial of punitive damages. This court and the parties have therefore been left to speculate as to the basis for the court's rulings. Our review of this case has been further complicated by the fact that not all of the claims and parties to this suit have been disposed of. Although the court did use the requisite Civ.R. 54(B) language, we fail to see why it did not dispose of the remaining claims.

## I. APPEAL

### A

In its first assignment of error appellant asserts that the trial court erred by failing to direct a verdict in its favor at the close of the evidence. In support of this assignment of error appellant argues that when the decedent proceeded around the gates and across the railroad tracks, she violated both state and municipal law governing motorists' conduct at railroad crossings, as well as a common-law duty to look and listen, and such violations constituted negligence *per se*. Appellant also argues that the evidence demonstrates that the decedent intentionally violated these laws and the crossing warnings and that had she not done so the accident would not have occurred and, therefore, the sole cause of the accident was the decedent's own negligence.

Appellees respond that the cases of *Schellhouse v. Norfolk & W. Ry. Co.* (1991), 61 Ohio St.3d 520, 575 N.E.2d 453, and *Brown v. Consol. Rail Corp.* (Oct. 11, 1991), Erie App. No. E–90–35, unreported, 1991 WL 253917, are dispositive of this issue. Appellees submit that, pursuant to that authority, the jury's finding that appellant CRC acted with malice and that that malice was a proximate cause of the accident removes all issues of negligence from the case and, therefore, the trial court properly found that the decedent's estate was entitled to recover the full amount of the compensatory damages assessed by the jury.

Civ.R. 50(A)(4) provides that:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

In considering a motion for a directed verdict, neither the weight of the evidence nor the credibility of the witnesses is for the court's determination. *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427,

429, 344 N.E.2d 334, 338. Where there is substantial evidence to support the position of the party against whom the motion is directed upon which reasonable minds may reach different conclusions, the motion must be denied. *Id.*

In *Schellhouse, supra,* the Supreme Court of Ohio determined that if a railroad committed an intentional tort with malice and if that intentional tort was a proximate cause of the plaintiff's damage, the negligence of the plaintiff's decedent is not a defense and the plaintiff would be entitled to full recovery. That court stated that "[a]cts committed with actual malice constitute behavior qualitatively different from that which may be characterized as merely negligent." *Id.,* 61 Ohio St.3d at 524, 575 N.E.2d at 456. The *Schellhouse* court noted that:

"Contributory negligence, prior to the enactment of R.C. 2315.19, did not bar recovery in an action predicated upon the willful, wanton or reckless conduct of a defendant. Likewise, the provisions of a statute which operate to prevent or reduce the recovery of a plaintiff due to her comparative negligence should not apply in such a case. Accordingly, in a civil action for tort or wrongful death, a finding by the jury that a plaintiff (or plaintiff's decedent) was comparatively negligent will not defeat or diminish the recovery of damages where the defendant's intentional tort, committed with actual malice, proximately caused the injury." *Id.,* 61 Ohio St.3d at 525, 575 N.E.2d at 457.

In *Brown v. Consol. Rail Corp.* (Oct. 11, 1991), Erie App. No. E–90–35, unreported, 1991 WL 253917, this court, citing *Schellhouse, supra,* determined that a finding of actual malice negates a set-off for damages under Ohio's comparative negligence law.

Even if there had been no evidence presented to support a finding of malice, under the comparative negligence doctrine the fact that the decedent violated state and municipal traffic codes would not automatically establish that she was the proximate cause of the accident and would not preclude competent evidence as to appellant's own negligence. See *Kromenacker v. Blystone* (1987), 43 Ohio App.3d 126, 131, 539 N.E.2d 675, 680; *Case v. Norfolk & W. Ry. Co.* (1988), 59 Ohio App.3d 11, 570 N.E.2d 1132; *Brown, supra.*

█ In this case, to grant a directed verdict, the trial court, upon its review and assessment of the evidence would have had to conclude that reasonable minds could reach no other conclusion but that the decedent was negligent and that her negligence was the sole proximate cause of her death. Contrary to appellants' assertions, our review of the record indicates that there was evidence presented from which the jury could have reasonably concluded that appellant CRC acted with actual malice or at the very least acted negligently and that its actions were a proximate cause of the accident. We find, therefore, that the trial

court did not err in denying appellant's motions for a directed verdict. Accordingly, appellant's first assignment of error is found not well taken.

## B

In its second assignment of error appellant asserts that it was denied a fair trial as a result of errors in the court's instructions to the jury. Appellant sets forth several specific areas in which it contends the trial court erred in its instructions: (1) in refusing to instruct the jury that the decedent's intentional violation of known duties could be found to constitute willful and wanton misconduct, and in refusing to submit an interrogatory to the jury on that issue; (2) by instructing the jury as to CRC's alleged intentional misconduct when the evidence did not warrant such an instruction; (3) in failing to charge the jury that the conduct of the Sandusky police officer could be found to be an intervening and superseding act relieving appellants of any liability and in failing to submit an interrogatory to the jury on this issue; (4) in giving jury instructions that were, in general, contradictory and confusing and erroneous as a matter of law; (5) in failing to charge the jury and submit the required verdict forms to the jury as to the claims involving Nelson's liability and Darlene Wightman's property damage claim.

We will first address appellant's assertions as to the specific instructions that it claims were erroneously excluded from the jury charge as well as the corresponding interrogatories that it asserts should have been submitted to the jury.

"It is well established that the trial court will not instruct the jury where there is no evidence to support an issue. *Riley v. Cincinnati* (1976), 46 Ohio St.2d 287, 75 O.O.2d 331, 348 N.E.2d 135. However, the corollary of this maxim is also true. [Footnote omitted.] 'Ordinarily requested instructions should be given if they are correct statements of the law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the instruction.' Markus & Palmer, Trial Handbook for Ohio Lawyers (3 Ed.1991) 860, Section 36:2. See, also, *Feterle v. Huettner* (1971), 28 Ohio St.2d 54, 57 O.O.2d 213, 275 N.E.2d 340, at the syllabus: *'In reviewing a record to ascertain the presence of sufficient evidence to support the giving of a[n] * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction.'* " (Emphasis added.) *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832.

The use of jury interrogatories is governed by Civ.R. 49(B), which provides in pertinent part:

"The court shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument. Counsel shall submit the proposed interrogatories to the court and to opposing counsel at such time. The court shall inform counsel of its proposed action on the requests prior to their arguments to the jury, but the interrogatories shall be submitted to the jury in the form the court approves. The interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law.

"The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict."

 Although Civ.R. 49(B) requires a trial court to submit interrogatories to the jury once it is requested to do so, the court still retains limited discretion "to reject submission of the interrogatories where the request is untimely or the proposed interrogatories are ambiguous, confusing, redundant, or otherwise legally objectionable. Proper jury interrogatories must address determinative issues and must be based upon trial evidence." *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 107, 592 N.E.2d 828, 836. In *Ramage, supra,* the court, citing *Ragone v. Vitali & Beltrami, Jr., Inc.* (1975), 42 Ohio St.2d 161, 165–166, 71 O.O.2d 164, 166, 327 N.E.2d 645, 649, stated:

"Authority is still vested in the judge to control the substance and form of the questions, and if the interrogatories are not based on the evidence, are incomplete, ambiguous or otherwise legally objectionable, the judge need not submit them to the jury." 64 Ohio St.3d at 107–108, 592 N.E.2d at 836.

 This court has thoroughly reviewed the arguments of the parties concerning the jury charge, the entire transcript of the proceedings before the trial court and the applicable law. As to appellant's assertions going to the effect of the conduct of the decedent, this court finds that not only would the evidence not support the giving of such an instruction and interrogatory but the requested instruction and interrogatory were not correct statements of the law. See *Payne v. Vance* (1921), 103 Ohio St. 59, 133 N.E. 85. As to appellant's assertion that the jury charge should have included the instruction and interrogatory as to the Sandusky police officer's conduct being a superseding and intervening cause, we find that the evidence in the record does not support the giving of such an instruction and interrogatory. As to appellant's assertions as to the issue of Nelson's liability not being submitted to the jury, the briefs and the record indicate that the parties stipulated that Nelson could be dismissed from the case

and therefore it was not necessary to submit the issue of his negligence to the jury.[4]

As to appellant's assertions that the trial court's jury instructions were generally confusing, contradictory and erroneous:

"A charge to the jury should be a plain, distinct and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced." *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 12, 19 OBR 8, 10, 482 N.E.2d 583, 585, citing *Parmlee v. Adolph* (1875), 28 Ohio St. 10, paragraph two of the syllabus. " * * * [A]n incomplete charge will constitute grounds for reversal of a judgment where the charge as given misleads the jury." *Marshall, supra,* 19 Ohio St.3d at 12, 19 OBR at 10, 482 N.E.2d at 585.

■ Upon consideration of the jury charge as a whole, in light of the evidence in the record and the applicable law, this court finds that charge met the standard set forth in *Marshall, supra.* Accordingly, appellant's second assignment of error is found not well taken.

## C

In its third assignment of error appellant asserts that the trial court committed prejudicial error by admitting the opinion testimony of appellees' witness, William Berg, and the testimony of Glen Slyker. Appellant argues that: (1) Dr. Berg's testimony should not have been submitted to the jury as that of an "expert" because his testimony contained nothing of a scientific or technical nature and contained nothing that was necessary to assist the jury in understanding and deciding the facts before it; (2) the trial court erred in admitting Berg's testimony as to the existence and breach of legal duties; (3) Berg's testimony was based upon facts that were not in evidence; (4) Berg should not have been allowed to testify as to CRC's private company rule; and (5) witness Glen Slyker should not have been allowed to testify as to the applicability of certain company rules of the Norfolk & Western Railway.

Evid. R. 702 states:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise."

Evid. R. 703 states:

---

4. The argument concerning Darlene Wightman's property damage claim and the punitive damage award will be dealt with later in this opinion.

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing."

Evid.R. 704 states:

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact."

The admissibility of expert testimony is a matter within the discretion of the trial court and its ruling thereon will not be disturbed on appeal absent a showing of an abuse of that discretion. *Frank v. Vulcan Materials Co.* (1988), 55 Ohio App.3d 153, 563 N.E.2d 339. An abuse of discretion implies an attitude by the trial court that is unreasonable, arbitrary, or unconscionable. *Ruwe v. Bd. of Springfield Twp. Trustees* (1987), 29 Ohio St.3d 59, 61, 29 OBR 441, 443, 505 N.E.2d 957, 958.

At the trial, appellees' witness, Dr. William Berg, was permitted to testify as an expert over appellants' objections. Berg first testified as to the materials he had reviewed and what he did to prepare for testifying at the trial. Berg then reviewed the conditions that existed at the time of the collision. Berg testified as to the time and space relationship of the trains and vehicles, and the perception points and reaction times of the motorists based upon all the impacting factors, including how the physical characteristics of the crossing grade affected those relationships. Berg also testified as to the placement and operation of railway warning devices and how their unnecessary activation creates credibility problems and hazards which lead to accidents, which is a phenomenon that is well known to the railroad. Berg also stated that the railroad industry recognizes the hazards created by the unnecessary operation of automatic warning signals and, therefore, certain operating rules contain recommendations for such situations. Berg testified that CRC's Operating Rule 105[5] was such a rule and that it acknowledges that one train can obscure the approach of another and create a hazard by directing that to avoid unnecessary operation of automatic warning devices, engines and/or cars are not permitted to stand longer than necessary. Berg also testified that that particular rule contains a provision that when automatic warning devices are not operating properly the dispatcher must be notified and approaching trains must be directed to prepare to stop at

---

5. A portion of CRC's Operating Rule 105 was read to the jury as follows: "When equipment is standing and obscuring the view of highway traffic, an employee must protect highway traffic against movement on adjacent tracks. Equipment stored on tracks close to a public crossing must be placed to permit a clear view for highway traffic using the crossing. When space permits, equipment must be placed three hundred (300) feet from the crossing."

crossings until highway traffic is protected. Berg then stated that, in his opinion, the principal causal factors of this collision were: the sight obstruction created by the stopped train; the operation of the warning devices for such a period of time that they created a credibility problem; the fact that the crew observed the conditions that existed, yet took no action to protect approaching motorists; and the fact that appellant's rules were unclear as to what action the crew was to take in such circumstances. Berg also testified that the decedent's conduct was reasonable under the circumstances since any reasonable person would have believed that the warning devices were not functioning properly and that it was safe to proceed cautiously. Berg testified also as to reasonable alternatives that were available to appellants which would have accommodated their needs and interests while at the same time protected the crossing and the motorists.

Later in the trial Glen Slyker, a retired engineer for Norfolk & Western Railway, was called to testify by appellees as a rebuttal witness.[6] Slyker testified that he reviewed the operating book for Norfolk & Western Railway and that there were rules contained therein that applied in the type of situation that existed in this case. Slyker also testified that based upon his experience and his observation of customs and practices observed during his years with Norfolk & Western, he had encountered many situations in which he had to stop a train within three hundred feet of a crossing and that there were rules in the book governing such situations. He cited specifically to Rule 101(3) which provided that when the end of a train stands near a grade crossing, a crew member must, when practicable, protect the crossing from movement on the adjacent tracks.

Upon consideration of the testimony of William Berg and the law as set forth above, this court finds that the trial court did not abuse its discretion in finding that it was necessary to assist the jury and that the admission of this testimony was in compliance with Evid.R. 703, 704 and 705. This court finds further that the trial court did not abuse its discretion in admitting Berg's testimony as to CRC's Rule 105 and Glen Slyker's testimony as to the rules of other railway companies, particularly given the cautionary instructions that were read to the jury concerning their consideration of these rules.[7] See *Columbus v. Taylor*

---

6. Slyker was called to rebut testimony by appellant CRC's witness, Louis Nelson. Nelson testified that he had reviewed the operating rules for two other major railroads operating in Ohio and found that both Norfolk–Southern Railroad and CSX had rules similar to CRC's Operating Rule 105. Nelson stated that these two rules, N.S. 103(c) and CSX Rule 100–F provided that the required distances for storing equipment near a crossing was only 100 feet.

7. The following cautionary instruction was given to the jury both during the course of the trial and in the court's final instructions:

"You are cautioned that the legal standard of care one party owes to another is set by the law. Just as one party may not ignore a duty owed to another by the promulgation of a

(1988), 39 Ohio St.3d 162, 164, 529 N.E.2d 1382, 1384. Accordingly, appellant's third assignment of error is found not well taken.

■ As its fourth assignment of error, appellant sets forth a general assignment of error encompassing all other errors that occurred at trial. Since appellant has set forth no arguments in support of this assignment of error, we need not address it. App.R. 12(A); *State v. Rivers* (1977), 50 Ohio App.2d 129, 135, 4 O.O.3d 100, 103, 361 N.E.2d 1363, 1367. Accordingly, appellant's fourth assignment of error is found not well taken.

## II. CROSS–APPEAL

### A

In their first cross-assignment of error appellees assert that the trial court erred by refusing to submit the issue of punitive damages to the jury. In support of this assignment of error appellees argue that that portion of R.C. 2315.21,[8] which provides that the amount of punitive damages to be awarded is to be determined by the court and not the jury violates Section 5, Article I of the Ohio Constitution[9] since it denies the right to a jury trial on the issue of damages to persons who suffer injury as a result of intentional wrongdoing. Appellees assert that Article I guarantees an individual the opportunity to have all factual issues in a civil action decided by a jury and that, although the Supreme Court of Ohio has not ruled on the constitutionality of this particular statute, its decision in *Kneisley v. Lattimer–Stevens Co.* (1988), 40 Ohio St.3d 354, 533 N.E.2d 743, makes it clear that the statute is unconstitutional.

In response, appellant argues that this issue is moot since there is no actual property damage award in the record on which to base an award of punitive damages. In the alternative, appellant asserts that in *Digital & Analog Design*

---

private rule, a legal duty is not created to a non-employee by the promulgation of a private rule and the violation of such a rule, even if proven, is not negligence in and of itself. Any alleged violation of a company rule may be considered by you along with all other evidence presented during trial on the issues presented."

8. R.C. 2315.21(C) provides in pertinent part:
 "(1) In a tort action, the trier of fact shall determine the liability of any defendant for punitive damages.
 "(2) In a tort action, whether the trier of fact is a jury or the court, if the trier of fact determines that any defendant is liable for punitive or exemplary damages, the amount of those damages shall be determined by the court."

9. Section 5, Article I of the Ohio Constitution provides:
 "The right of trial by jury shall be inviolate, except that, in civil cases, laws may be passed to authorize the rendering of any verdict by the concurrence of not less than three-fourths of the jury."

*Corp. v. N. Supply Co.* (1992), 63 Ohio St.3d 657, 590 N.E.2d 737, the Supreme Court of Ohio determined that, since the right to punitive damages is an equitable right, as opposed to a legal one, a litigant has no constitutional right to have a jury determine the amount of punitive damages.

Initially we note that "[a]ll legislative enactments enjoy a presumption of constitutionality." *Sedar v. Knowlton Constr. Co.* (1990), 49 Ohio St.3d 193, 551 N.E.2d 938. A statute will be declared invalid only if its unconstitutionality is shown beyond a reasonable doubt. *Zoppo v. Homestead Ins. Co.* (July 8, 1993), Cuyahoga App. No. 62926, unreported, 1993 WL 262641, citing *Cincinnati Bd. of Edn. v. Walter* (1979), 58 Ohio St.2d 368, 376, 12 O.O.3d 327, 331, 390 N.E.2d 813, 819.

We find appellees' assertion that the Supreme Court's decision in *Kneisley, supra,* requires us to find R.C. 2315.21 unconstitutional to be without merit. That 'case concerns the right to a jury trial for the assessment of damages in intentional tort actions against an employer and we decline to apply it to the case before us.

We do find, however, that the decision of the Supreme Court in *Digital & Analog Design Corp., supra,* is dispositive of this issue. In that case the court determined that an award of attorney fees in a tort action does not compensate the victim for damages flowing from the tort but is, rather, a "punitive (and thus equitable) remedy that flows from a jury finding of malice and the award of punitive damages." *Id.,* 63 Ohio St.3d at 662, 590 N.E.2d at 742. The *Digital* court found that there was no constitutional right to a trial by jury on the issue of what amount of attorney fees should be awarded in a tort action. *Id.* That court also stated:

"The General Assembly, through its enactment of R.C. 2315.21 and the amendment of R.C. 2315.18, [footnote omitted] has now clarified that it is a proper function for the trial court, in a jury trial in a tort action, to determine the amount of punitive damages, but that the issue of liability is expressly reserved to the jury. Although these provisions were not in effect at the time the instant cause of action arose, we are nonetheless persuaded that the approach taken by the legislature is the proper course for the development of the common law of this state." *Id.,* 63 Ohio St.3d at 663, 590 N.E.2d at 742–743.

In accordance with the foregoing this court finds that appellees have failed to demonstrate beyond a reasonable doubt that the provision of R.C. 2315.21 that directs that the court determine the amount of punitive damages to be awarded in a tort action once the finder of fact determines liability therefor is unconstitutional. See *Zoppo, supra.* Accordingly, appellees' first assignment of error is found not well taken.

B

In their second cross-assignment of error appellees assert that the trial court erred in refusing to award punitive damages, attorney fees and costs to Darlene Wightman on her property damage claim. Appellees argue that, while the amount of punitive damages to be awarded lies within the discretion of the trial court, it was not within the court's discretion to fail to award any punitive damages when the jury expressly found that they are to be assessed. Appellees argue further that once the finder of fact determines that punitive damages may be recovered, an award of attorney fees and costs is also warranted.

In response, appellant argues that the trial court properly denied an award of punitive damages because there is no verdict or judgment on Darlene Wightman's property damage claim and punitive damages are not recoverable in a wrongful death action; that while appellant did stipulate at trial as to the value of the car, it did not stipulate as to the issue of liability, since the question of Darlene's comparative negligence was at issue; and that the issue of their liability for the damage to Darlene Wightman's car was never submitted to the jury and no judgment was entered in her favor on that claim. Appellant argues in the alternative that even if there was a judgment or verdict on the property damage claim, the trial court has discretion to refuse to grant an award of punitive damages based upon a finding that actual damages were insufficient to support the award, citing *Ray v. Engard* (Nov. 22, 1985), Lucas App. No. L–85–051, unreported, 1985 WL 8229; *Case v. Norfolk & W. Ry. Co.* (1988), 59 Ohio App.3d 11, 570 N.E.2d 1132; *Clark v. Totten* (Apr. 24, 1986), Cuyahoga App. Nos. 50535, 50536, unreported, 1986 WL 4970; *Williams v. McCrory Corp.* (Jan. 11, 1985), Montgomery App. No. 8963, unreported, 1985 WL 6680. Finally, appellant asserts that the trial court's decision to award no punitive damages was proper in that the evidence presented at trial did not support a finding of actual malice.

 It is not disputed that punitive damages are not recoverable in a wrongful death action. *Rubeck v. Huffman* (1978), 54 Ohio St.2d 20, 8 O.O.3d 11, 374 N.E.2d 411. The recovery of punitive damages in tort actions is provided for, however, by R.C. 2315.21, which provides in pertinent part:

"(B) Subject to division (D) of this section, punitive or exemplary damages are not recoverable from a defendant in question in a tort action unless both of the following apply:

"(1) The actions or omissions of that defendant demonstrate malice, aggravated or egregious fraud, oppression, or insult, or that defendant as principal or master authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate; .

"(2) The plaintiff in question has adduced proof of actual damages that resulted from actions or omissions as described in division (B)(1) of this section.

"(C)(1) In a tort action, the trier of fact shall determine the liability of any defendant for punitive or exemplary damages.

"(2) In a tort action, whether the trier of fact is a jury or the court, if the trier of fact determines that any defendant is liable for punitive or exemplary damages, the amount of those damages shall be determined by the court.

"(3) In a tort action the burden of proof shall be upon a plaintiff in question, by clear and convincing evidence, to establish that he is entitled to recover punitive or exemplary damages."

The first question we must address is whether the jury's determination that CRC is liable for punitive damages was proper without a verdict or judgment on Darlene Wightman's property damage claim. The complaint in this action set forth a claim for property damage for Darlene Wightman's car, which was the vehicle the deceased was driving, and for an award of punitive damages. During the course of the trial the parties agreed to stipulate to the value of the vehicle. At the conclusion of the trial, the court did not instruct the jury on Wightman's property damage claim or submit a verdict form on that issue. Although there appears to be no judgment entry in the record as to the property damage claim, we find that, since the jury determined that liability for the collision rests with appellant CRC based on its finding of actual malice, appellee Darlene Wightman is, as a matter of law, entitled to judgment on the property damage claim in the amount stipulated by the parties. Accordingly, upon the trial court, on remand, entering the appropriate judgment on the property damage claim, there is a proper basis for the award of punitive damages. As to the issue of comparative negligence, we find that since the jury determined that CRC acted with malice, the existence of contributory negligence would not defeat or diminish her recovery of damages. *Schellhouse, supra.*

Having determined that there is a proper basis for the award of punitive damages, we must then address the issue of whether the trial court abused its discretion in awarding no punitive damages. Appellant asserts that the trial court properly refused to award any amount for punitive damages because the actual damages of $2,000 were insufficient to support an award. Again, due to its summary entry, we do not know the basis for the trial court's denial of punitive damages.

Upon review of R.C. 2315.21, however, we find that it does not require that the actual damages upon which an award of punitive damages is based be substantial. Although the General Assembly has not set forth the factors to be considered, our review of cases dealing with awards of punitive

damages compels us to conclude that the amount of the actual damages sustained should not be the sole factor in determining the appropriate award of punitive damages. Rather, a number of factors must be considered by a trial court in making its determination, while keeping in mind that the purpose behind an award of punitive damages is punishment of the guilty party and the deterrence of similar conduct in the future. See, generally, *Villella v. Waikem Motors, Inc.* (1989) 45 Ohio St.3d 36, 543 N.E.2d 464; *Calmes v. Goodyear Tire & Rubber Co.* (1991), 61 Ohio St.3d 470, 473, 575 N.E.2d 416, 419. These factors would necessarily include, but are not limited to, the nature of the conduct that resulted in the injury, the financial condition of the defendant, the amount necessary to deter future similar conduct, and prior or similar acts by the defendant, as well as the amount of actual or compensatory damages. *Villella, supra; Spadafore v. Blue Shield* (1985), 21 Ohio App.3d 201, 21 OBR 215, 486 N.E.2d 1201; *Estate of Morad v. Task* (Mar. 10, 1994), Cuyahoga App. No. 64787, unreported, 1994 WL 78157.

In light of all of the foregoing, this court finds that the trial court abused its discretion in failing to award any amount for punitive damages after the jury determined that appellees are entitled to such an award.

As to appellant's assertion that the evidence did not support the jury's finding of actual malice, the term "actual malice" is defined as: "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, *or* (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." (Emphasis *sic.*) *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus.

Upon consideration of the entire record of proceedings in the trial court, we find that there was clear and convincing evidence to support the jury's finding of actual malice on the part of appellant CRC.

As to the issue of attorney fees, although our review of the record shows that appellees requested an award of attorney fees and costs, and the issue was briefed by both parties, there appears to be nothing in the record to indicate that the trial court ever ruled on that request. This issue is therefore not before us on appeal but remains for the trial court to address upon remand by this court.

Accordingly, appellees' second cross-assignment of error is found well taken in part and not well taken in part.

## C

In their third cross-assignment of error appellees assert that the trial court erred in refusing to order CRC to pay interest at the statutory rate on the

$1,000,000 compensatory damage award from the date of the jury's verdict, or in the alternative, for each day that the entry of judgment was delayed as a result of appellants' motion to disqualify the trial judge.

As to this issue as well, our review of the record indicates that, although this matter was raised and briefed, no disposition was made by the trial court. This issue therefore is not before us on appeal but remains for the trial court to address upon remand by this court. Accordingly, appellees' third cross-assignment of error is found not well taken.

On consideration whereof, this court finds that the decision of the Erie County Court of Common Pleas is affirmed in part and reversed in part. The decision of that court denying appellee, Darlene Wightman, any award of punitive damages is reversed and this case is remanded to the trial court for determination as to the amount of punitive damages to which appellee, Darlene Wightman, is entitled in accordance with this opinion and for disposition of all remaining matters.

Court costs assessed to appellants.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

GLASSER and SHERCK, JJ., concur.