DECISION AND JUDGMENT ENTRY
This is an appeal from judgments of the Erie County Court of Common Pleas which entered a jury verdict in favor of appellees, James K. and Maria A. Matheson, and denied appellant's motions for a directed verdict, a judgment notwithstanding the verdict and a new trial. Appellant, Joyce Morog, appeals and asserts the following assignments of error:
 "THE TRIAL COURT ERRED WHEN IT DENIED THE APPELLANT'S MOTIONS FOR A DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING THE VERDICT OR FOR A NEW TRIAL."
 "THE TRIAL COURT'S JUDGEMENT [SIC] WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 "THE TRIAL COURT ERRED WHEN IT REFUSED TO INSTRUCT THE JURY ON THE STATUTE OF LIMITATIONS."
 "THE TRIAL COURT ERRED WHEN IT REFUSED TO INSTRUCT THE JURY ON PRESCRIPTION."
 "THE TRIAL COURT ERRED WHEN IT REFUSED TO INSTRUCT THE JURY THAT IF IT FOUND IN FAVOR OF THE APPELLANT ON EITHER ADVERSE POSSESSION, ACQUIESCENCE, OR ESTOPPEL, THAT IT SHOULD RETURN A VERDICT IN FAVOR OF THE APPELLANT."
 "THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO USE GENERAL VERDICTS."
"THE TRIAL COURT ERRED BY USING SPECIAL VERDICTS."
 "THE TRIAL COURT ERRED BY FAILING TO PROVIDE THE JURY WITH THE REQUESTED NUMBER OF SPECIAL VERDICTS."
 "THE TRIAL COURT ERRED WHEN IT LIMITED THE APPELLANT'S CROSS-EXAMINATION OF WITNESS JOHN FUTO WITH RESPECT TO HIS OBLIGATIONS TO WARRANT AND DEFEND THE TITLE HE HAD TRANSFERRED TO THE APPELLEES."
 "THE TRIAL COURT ERRED WHEN IT SUSTAINED THE OBJECTION TO THE QUESTION TO JOHN FUTO AS TO WHETHER HE TOLD THE TRUTH DURING HIS DEPOSITION OR DURING TRIAL."
As of 1970, William E. and Miriam L. Kane owned all of Lot 29, Vermillion Township, Erie County, which consisted of three parcels. Of these parcels, one abutted Lake Erie ("Lakeshore Parcel"), one abutted the road ("Roadway Parcel") and the third was located between the other two parcels ("Rear Parcel"). In the summer of 1970, the Kanes conveyed title to the Roadway Parcel to appellant; however, they retained title to approximately a sixteen foot wide strip used as a driveway to access their property. The strip commenced at the center of the road and ended at the southeast corner of the Lakeshore Parcel. Appellant was granted an easement over this property, that is, a gravel driveway, as a means of ingress and egress to and from her property. Likewise, when, in the fall of 1970, the Kanes transferred title of the Rear Parcel to appellant's mother, Josephine Morog, the conveyance contained the same express easement. In 1977, Josephine Morog transferred her interest in the Rear Parcel to appellant. After the death of both of the original grantors, Michele Kane Friday and her spouse conveyed their interest in the Lakeshore Parcel to John and Rhonda Futo who, in 1995, conveyed their interest to appellees. Each conveyance contained the same easement.
Nonetheless, testimony at the jury trial of this case revealed that the Kanes, the Futos and appellees were and are fully aware of the fact that the sixteen foot wide driveway was in a location different from that described in the parties' titles in that the easement encroaches on the property to the east, which at the time of the trial of this matter, was owned by Frank and Eva Elkovich. The degree of encroachment varies between four and one-half feet and nine feet. Because the sixteen foot wide driveway is not in the proper place, a grassy strip of land ("Green Strip"), varying in width of up to eleven feet, lies between the driveway and the lot lines of the Roadway Parcel and the Rear Parcel. It is undisputed that the encroaching driveway was in existence at the time that appellant and her mother purchased their respective parcels.
After they purchased the Lakeshore Parcel, appellees informed appellant that they wanted to move the driveway to the location described in the parties' deeds. Appellant told appellees to "contact her lawyer." A 1999 survey, commissioned by appellees, confirmed the fact that the driveway was not in the correct location as set forth in the deeds. The survey also disclosed that appellant's leach bed, located at the north end of the Rear Parcel, extends into the Lakeshore Parcel.
After the survey was completed, appellees informed appellant that they were going to construct an asphalt driveway on the area described in the conveyances and that they expected appellant to pay for one-half of that driveway as required under the terms of the grant of the easement. Because appellant claimed that she believed that, from the time of purchase, she and her mother owned the Green Strip to the west of the existing gravel driveway, she refused to comply with appellees' demand. Appellees commenced the instant action on March 9, 1999.
Based on the foregoing facts, appellees' complaint set forth causes of action sounding in ejectment, quiet title and injunction, as well as a request for monetary damages, with regard to both the Green Strip and that portion of the Lakeshore Parcel containing the leach bed. Appellant answered and raised, among other things, the affirmative defenses of estoppel and the barring of appellees' claims by the pertinent statutes of limitations. She also filed two counterclaims asserting ownership of the Green Strip by means of adverse possession. She further requested a declaratory judgment finding that she has "an easement by prescription on the existing driveway." Appellant later raised the doctrine of acquiescence as a means of claiming title to the Green Strip. At the close of all evidence in a jury trial, appellant orally requested leave to amend her pleadings in order to include a twenty-two foot wide piece of land titled as part of the Lakeshore Parcel, and containing her leach bed, in her counterclaim of adverse possession. The trial court granted this motion. The parties also agreed to an easement by implication for the leach bed.
Upon deliberation, the jury returned a general verdict in favor of appellees as to title and ownership of both the Green Strip and the twenty-two foot wide piece of land upon which appellant's leach bed encroached. Appellant filed a timely motion for a judgment notwithstanding the verdict and for a new trial; appellees filed memoranda in opposition. The trial court overruled both motions and entered a judgment on the jury verdict quieting title to the disputed property in appellees. This appeal followed.
Because of its importance to her remaining assignments of error, we shall first address appellant's second assignment of error. Appellant contends that the trial court's judgment is against the manifest weight of the evidence as to her claims of adverse possession, acquiescence and estoppel.
To acquire real property "by adverse possession, a party must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous and adverse use for a period of twenty-one years." Grace v.Koch (1998), 81 Ohio St.3d 577, syllabus. The occupancy must be of such a character as to give the real owner of the property notice of the adverse claim. Id. at 581, citing Humphries v. Huffman (1878),33 Ohio St. 395, 402.
In the present case, appellant testified that she began residing on her property in 1971 or 1972. When asked about her use of the Green Strip, she stated that it was "grassy" and that she mowed the strip. The testimony of John Futo revealed that until the late 1980's, there was just grass on the strip and that he mowed it most of the time. Futo described the Green Strip as the "right-of-way" and said that they piled snow on the strip when they plowed the gravel driveway. Frank Elkovich testified that he and William Kane also mowed the Green Strip almost all of the time. Although appellant denied that she knew who held title to the grassy strip, John Futo stated that he learned from William Kane in 1986 that the gravel driveway was in the improper location and that he informed appellant of this fact; Elkovich also testified that he discussed the fact that the driveway was partially on his property with appellant. It was only after this, in approximately 1988, that appellant erected a wire fence on the west side of the Green Strip, encroaching on the strip anywhere from eighteen inches to six inches. Appellant also claimed that she occasionally parked cars on the strip and rode her horse on it. According to James Matheson, appellant did not park "farm implements" on the Green Strip until after the lawsuit was filed.
As for the twenty-two foot area under which appellant's leach bed is partially located, appellant testified that at one point she stacked wood on it, that she waxed cars on the property and that she rode horses there. However, a line of maple trees stands along the boundary line appearing in the deeds of the parties. According to Futo, appellant told him that the trees on this boundary line were his and that if any of their limbs fell on her house, she would hold him responsible for the damage.
The foregoing evidence is not clear and convincing evidence of appellant's actual possession or open, hostile, exclusive or continuous use of either of the disputed properties for the requisite period of time. In Grace, the party claiming entitlement to property by means of adverse possession mowed the grass and parked cars on the disputed property, their children played on the property and they placed firewood, oil drums and a swing set on the property. The Ohio Supreme Court found that this did not constitute clear and convincing evidence notifying the owners of the property that their dominion was "invaded." _Id. at 582. Here, appellant's main use of the Green Strip throughout a twenty-one year period was the mowing of grass; even this use was not continuous. Mowing grass is, in and of itself, not sufficient to demonstrate adverse possession. Montieth v. Twin Falls United Methodist Church (1980),68 Ohio App.2d 219, 225; Meyer v. Pockros (1924), 18 Ohio App. 506, 511;Ballard v. Tibboles (Nov. 8, 1991) Ottawa App. No. 91-OT-013, unreported. With regard to the twenty-two foot strip, appellant's use of the property was similar to, but less than, those uses demonstrated in Grace. Thus, appellant failed to offer clear and convincing evidence of an adverse claim to either the Green Strip or the twenty-two foot strip.
Generally, two conditions must be present in order for the doctrine of acquiescence to apply: first, the adjoining landowners must mutually respect and treat a specific line as the boundary to their property, and second, that line must be treated as such for a period of years, usually the statutory time period required for adverse possession, that is, twenty-one years. Ballard v. Tibboles, supra. See also Bobo v. Richmond
(1874), 25 Ohio St. 115, 118; Engle v. Beatty (1931), 41 Ohio App. 477,483.
In the present case, appellant failed to offer clear and convincing evidence of the fact that the true owners of the disputed property treated the eastern edge of the Green Strip as the boundary line to their property. The evidence disclosed that Kane and Futo knew that the Green Strip was actually part of the Lakeshore Parcel and that the driveway, which they also knew was titled in their names, encroached on the Elkovich's property. Both men discussed moving the driveway to its proper location on the Green Strip. In fact, John Futo expressly testified that he did not treat the eastern edge of the Green Strip, i.e., the western edge of the gravel driveway, as the dividing line between the Lakeshore Property and appellant's property.
As to the twenty-two foot strip, John Futo also mowed that property during his possession of the Lakeshore Parcel and was informed by appellant herself that he owned the trees on that property. Thus, while appellant apparently used the twenty-two foot strip, there is a dearth of evidence showing that the northern boundary line claimed by appellant under the doctrine of acquiescence was considered the dividing line of the property by the true owners.
Likewise, appellant failed to demonstrate the requirements of estoppel. In particular, estoppel requires that the record owners realize the true boundary of their property, but allow the adjoining landowner to rely upon declarations or conduct regarding a boundary line which does not conform to the description in his or her title. Additionally, the other landowner must rely on this conduct or declarations in ignorance of the true title and occupy to the line declared. Ballard v. Tibboles, supra, citing McCafferty v. Conover'sLessee (1857), 7 Ohio St. 99, 105-106. In the case under consideration, no evidence was offered to prove that any of the title holders engaged in conduct or made any declarations indicating that the eastern boundary of appellant's property was at the eastern edge of the Green Strip (western edge of the gravel driveway). Furthermore, evidence was offered to show that appellant knew that her boundary line did not extend to this point; therefore, appellant failed to establish that she was ignorant of the true title. Appellant also failed to satisfy this latter requirement with regard to the twenty-two foot strip. Her comment to Futo concerning his ownership of the maple trees and responsibility for any damage caused to the house by falling branches is evidence of the fact that she did know the true boundary of her property.
For these reasons, the judgment of the trial court is not against the manifest weight of the evidence on the three legal theories raised by appellant. Accordingly, appellant's second assignment of error is found not well-taken.
In her first assignment of error, appellant asserts that the trial court erred in failing to grant her motion for a directed verdict, her motion for a judgment notwithstanding the verdict or, in the alternative, her motion for a new trial. She maintains that the trial court erred in not granting her motion for a directed verdict and judgment notwithstanding the verdict on her legal theories of acquiescence and estoppel, as well as on her claim of an easement by prescription and upon appellees' action for ejectment. Appellant makes no argument concerning the denial of her motion for a new trial[1]. We shall, therefore, not consider this issue. See App.R. 12(A)(2).
Civ.R. 50(A)(4) states:
 "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
Under the "reasonable minds" test set forth in Civ.R. 50(A)(4) a court only determines whether there exists any evidence of substantial probative value in support of the claims of the party against whom the motion is directed. Ruta v. Breckenridge-Remy Co. (1982),69 Ohio St.2d 66, 69. A motion for a directed verdict examines the materiality of the evidence, as opposed to the conclusions to be drawn from the evidence and is therefore a question of law. Id.. In substance the movant must show that reasonable minds could not differ on the evidence, i.e., that no conflict or dispute exists for a jury to consider. Ramage v. Cent. Ohio Emergency Serv., Inc. (1992),64 Ohio St.3d 97, 109. The test for determining a motion for a judgment notwithstanding the verdict is identical to that employed in determining a motion for a directed verdict pursuant to Civ.R. 50(A). Wagner v.Roche Laboratories (1996), 77 Ohio St.3d 116, 121.
At the close of appellees' case-in-chief, appellant moved the trial court for a directed verdict on two of appellees' causes of action, to wit, ejectment and quiet title. Appellant contended that these claims were barred by R.C. 2305.04, which provides that an action for the recovery of title to or the possession of real property shall be brought within twenty-one years from the time the action accrued. Appellant argued that appellees' cause of action accrued in 1971 or 1972 when appellant began residing on her property and that appellees did not commence the instant cause until 1999. Appellant therefore contended that appellees' ejectment and quiet title actions were barred by the twenty-one year statute of limitations. The trial court denied the motion, but it was renewed by appellant at the close of all evidence. The court again denied the motion.
As for appellant's motion for a judgment notwithstanding the verdict, the motion was predicated on (1) R.C. 2305.04; (2) her counterclaims of adverse possession or acquiescence; (3) her counterclaim of an easement by prescription over the already existing sixteen foot gravel driveway; and (4) her affirmative defense of estoppel.
Clearly, R.C. 2305.04 applies to actions in ejectment and quiet title. However, the twenty-one year statute of limitations does not began to run until the plaintiff's cause of action accrues. The cause of action does not accrue until the defendant takes possession of the disputed property. See Webster v. Pittsburgh, Cleveland and Toledo Ry. (1908),78 Ohio St. 87, paragraph one of the syllabus. Therefore, the determination of the issue of whether an ejectment or quiet title action is barred by R.C. 2305.04 necessarily turns upon a factual question of when the defendant took possession, if at all, of the record owner's property. Indeed, in an action for the recovery of real property where the defendant has entered a denial to possession, a defense of the statute of limitations may be regarded as surplusage because it is merely another form of denying the plaintiff's title. Kyser v. Cannon
(1876), 29 Ohio St. 359, paragraph two of the syllabus. See, generally, 37 Ohio Jurisprudence 3d (1982) Ejectment and Related Remedies, Section 42.
In applying this standard to the facts of this case, as set forth above, we hold that substantial competent evidence is present in the record upon which reasonable minds could differ as to whether appellant ever took possession of the Green Strip or the twenty-two foot strip and, if so, the point in time that said possession occurred. We reach the same conclusion as to the claims of adverse possession, acquiescence and the affirmative defense of estoppel, that is, reasonable minds could differ as to whether the elements of these legal theories were demonstrated. Therefore, the trial court properly denied appellant's motion for directed verdict and a judgment notwithstanding the verdict on these issues.
Turning to appellant's request for a declaration that she has a prescriptive easement on the existing gravel driveway, the trial court correctly determined that an express easement exists for all but the four feet to nine feet band that encroaches on the Elkovich Property. Because Frank and Eva Elkovich were not parties to the present action, the court also correctly determined that it lacked the jurisdiction to afford appellant the requested declaratory relief. See R.C. 2721.12; Cicco v.Stockmaster (2000), 89 Ohio St.3d 95.
For all of the foregoing reasons, appellant's first assignment of error is found not well-taken.
Appellant's third, fourth and fifth assignments of error relate to the instructions provided to the jury by the trial court. Because we find that the trial court lacked the jurisdiction to consider the allegation of an easement by prescription, appellant's fourth assignment of error is found not well-taken. In her third assignment of error, appellant contends the trial court erred in failing to charge the jury with a requested instruction on the statute of limitations found in R.C. 2305.04. In her fifth assignment of error, appellant urges that the trial court erred by not instructing the jury that it must return a verdict in favor of appellant if it found for her on any one of the three grounds (adverse possession, acquiescence, or estoppel). Appellant also mentions "special verdict" forms in the assignment, but we shall disregard this argument because appellant addresses the same in her eighth assignment of error.
A court is required to give jury instructions if they are correct statements of the law as applied to the facts in a given case and where reasonable minds might reach the conclusion sought by the instruction.Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 591. The instruction should be a plain, distinct and unambiguous statement of the law as applicable to the case based on the facts presented at trial.Marshall v. Gibson (1985), 19 Ohio St.3d 10, 12. The decision as to the content of a jury instruction is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. Statev. Martens (1993), 90 Ohio App.3d 338, 343. A jury charge must be considered as a whole and the reviewing court must determine whether the charge probably misled the jury in a matter materially affecting a complaining party's substantial right. Becker v. Lake County Mem. Hosp. (1990), 53 Ohio St.3d 202, 208.
Applying this law to the case before us, our review of the trial court's jury instructions as a whole leads us to conclude that the trial court did not abuse its discretion. Appellant's request for the statute of limitations instruction rested on the factual determinations that must be made by the jury and, as noted infra, the statute of limitations defense in a case where possession is denied by the defendant is mere surplusage. Accordingly, any error in failing to give the requested instruction did not substantially prejudice appellant. As to the instructions on adverse possession, the doctrine of acquiescence and the affirmative defense of estoppel, the court set forth the elements of each legal theory. During the explanation of each separate theory, the court stated that if the jury determined that clear and convincing evidence demonstrated either adverse possession, acquiescence or estoppel respectively, the jury must return a verdict in favor of appellant. These instructions are, in essence, those requested by appellant, are a correct statement of the law and are distinct and unambiguous. Thus, appellant's third and fifth assignments of error are found not well-taken.
Appellant's sixth and seventh assignments of error allege that the trial court erred by "failing to use general verdicts" in contravention of Civ.R. 49(A) and, instead, used "special verdicts" as abolished by Civ.R. 49(C). Civ.R. 49(A) requires that a "general verdict, by which a jury finds generally in favor of the prevailing party, shall be used." General verdicts were employed in the present case. The verdicts in the record of this case were simply divided into a general verdict on the "22 Foot Parcel" and one on the "Green Strip." The division was necessary and does not constitute impermissible special verdicts as prohibited by Civ.R. 49(C). Appellant's sixth and seventh assignments of error are found not well-taken.
In view of appellant's sixth and seventh assignments of error, we find the argument in her eighth assignment of error surprising. In this assignment, she asserts that the trial court erred by not submitting twelve special verdict forms, each addressing one of her three legal theories. As noted by appellant, the use of general verdicts is mandatory, see Schellhouse v. Norfolk Western Ry. (1991),61 Ohio St.3d 520, syllabus, and the court was therefore required to reject the use of any special verdicts. Appellant's eighth assignment of error is found not well-taken.
Appellant's ninth and tenth assignments of error concern the limitation of her trial counsel's cross-examination of John Futo. In her ninth assignment of error, she urges that the court erred in sustaining appellees' objection to questions related to appellees' right to commence an action against Futo if it was determined that he did not convey good title to the Lakeshore Parcel as described in the warranty deed.
Evid.R. 611(B) permits cross-examination "on all relevant matters and matters affecting credibility." As stated by the Ohio Supreme Court:
 "The scope of cross-examination and admissibility of evidence during cross-examination are matters which rest in the sound discretion of the trial judge. Thus, when the trial court determines that certain evidence will be admitted or excluded from trial, it is well established that the order or ruling of the court will not be reversed unless there is a clear and prejudicial abuse of discretion." O'Brien v. Angley
(1980), 63 Ohio St.2d 159, 163.
An abuse of discretion connotes more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Here, appellant asserts that Futo's duties under the warranty deed and the possibility that appellees may commence a lawsuit against him based on that deed were relevant evidence of Futo's interest in the outcome of the present case. While we agree that such evidence was relevant to Futo's self-interest and therefore was probative of his credibility, a reading of the trial transcript reveals that appellant's trial counsel was allowed to extensively question Futo as to his signing of the warranty deed and his obligations under that deed. Futo read the deed and acknowledged that the deed required that he warrant and defend the title to the described property. In fact, Futo admitted that he obligated himself, "in writing, to make certain that [appellees] received title to the property described in that deed * * *." This was sufficient probative evidence to establish Futo's interest in the proceedings below.
It was only when counsel asked Futo whether, upon a determination thathe knew that he did not convey good title, appellees had a right to bring a claim against him, that appellees objected on the basis that counsel was asking Futo for a legal conclusion. The trial court sustained this motion. We agree with this determination. The right to bring suit on the title was demonstrated; however, appellant's counsel went a step further and asked, in essence, Futo to make the legal conclusion that he failed to convey good title to the Lakeshore Parcel. Accordingly, the trial court did not abuse its discretion in sustaining appellees' objection to this line of questioning. Appellant's ninth assignment of error is found not well-taken.
In her tenth assignment of error, appellant maintains that the trial court abused its discretion in refusing to order Futo to answer appellant's question as to whether he told the truth in prior deposition testimony. On cross-examination, appellant's counsel attempted to use Futo's deposition testimony to impeach Futo's statement that appellant knew that she lacked title to the Green Strip. Counsel pointed out that, in his deposition, Futo testified that he never discussed the "exact points" of the western boundary line of the Lakeshore Parcel. Counsel then tried to use this testimony to make Futo admit that he was not telling the "truth" in his direct testimony at trial. The trial court sustained an objection to this question. On re-direct examination, appellees' counsel rehabilitated Futo's testimony by focusing on Futo's general deposition testimony regarding what he did tell appellant about the boundary lines of the property and, as early as 1986, the moving of the driveway to its correct location.
Futo never stated during his trial testimony that he discussed the exact metes and bounds of the Lakeshore Parcel with appellant. Rather, he stated that he told her that the driveway was in the wrong place. Thus, the statement made in his deposition concerning the exact points of the boundaries of the Lakeshore Parcel is not in conflict with his direct testimony; therefore, the trial court did not abuse its discretion in sustaining appellees' objection. Accordingly, appellant's tenth assignment of error is found not well-taken.
On consideration whereof, this court finds that substantial justice was done the party complaining, and the judgment of the Erie County Court of Common Pleas is affirmed. Appellant, Joyce Morog, is ordered to pay the costs of this appeal.
James R. Sherck, J., Richard W. Knepper, J..
 ____________________________ Melvin L. Resnick, J.
JUDGE
[1] Appellant cited to various sections of Civ.R. 59 in her motion before the trial court, but also failed to make any argument as to that motion for a new trial to the lower court.